IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| ELISA MAY MITTELSTAED, individually and as guardian of her minor children, MJP, RSP, and CMS,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF MONTANA CHILD AND FAMILY SERVICES DIVISION, ASHLEE WALKER, ALYSSA KIEFER, DEBRAN ANDERSON, and BRITTANY ANDERSON,<br><br>Defendants. | CV 22-58-BLG-SPW<br><br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS |

Plaintiff Elisa May Mittelstaed ("Mittelstaed") brings this action on behalf of herself and her minor children against the State of Montana Child and Family Services Division, Ashlee Walker, Debran Anderson, Brittany Anderson, and Alyssa Kiefer[1] ("Defendants"). (Doc. 80). Defendants State of Montana Child and Family Services Division, Ashlee Walker, Debran Anderson, and Brittany Anderson ("State

---

[1] Defendant Alyssa Kiefer was named as a defendant for the first time in the Third Amended Complaint. (Doc. 80 at 1). The Findings and Recommendations mistakenly refer to her as "Ashley" Kiefer. (Doc. 123 at 1). She was named in Counts 3 and 5; however, Count 5 has since been dismissed. (Doc. 82 at 2; Doc. 94 at 3; Doc. 92 at 2). It is unclear whether Mittelstaed intends to pursue the claim in Count 3 against Kiefer as she has not been served with the Third Amended Complaint, and to date, has not appeared in this action. In light of the Court's finding that Mittelstaed's claims are time barred, the remaining claim against Kiefer would likewise be time barred.

1

Defendants") have moved for summary judgment on all claims (Doc. 101) and Mittelstaed has moved for partial summary judgment on two claims (Doc. 104). Magistrate Judge Timothy J. Cavan entered Findings and Recommendations (Doc. 123), in which he recommends granting State Defendants' Motion for Summary Judgment and denying Mittelstaed's Motion for Partial Summary Judgment as moot.

Mittelstaed timely filed an objection. (Doc. 124). A party is entitled to de novo review of the findings and recommendations to which it specifically objects. Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(C). A court reviews for clear error the findings and recommendations to which no party timely objects. *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if "the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

For the reasons stated herein, the Court adopts Judge Cavan's Findings and Recommendations, grants State Defendants' Motion for Summary Judgment, and denies Mittelstaed's Motion for Partial Summary Judgment as moot.

## I.    Background

Mittelstaed has three children: RSP, MJP, and CMS. (Doc. 108 at 1). This case arises from allegations that Defendants engaged in unlawful conduct throughout a child-custody proceeding, including coercive drug-testing practices, the issuance

of misleading reports, and the removal and subsequent placement of Mittelstaed's children.

On November 2, 2018, Montana's Child and Family Services Division ("CFSD") received a report through the Montana Family Safety Information System regarding Mittelstaed. (*Id.* at 2). The report alleged that Mittelstaed had exposed her three children to unreasonable physical or psychological risk of harm due to suspected drug use. (Doc. 103-1 at 19). Mittelstaed disputes the factual basis of the report, asserting that State Defendants have refused to disclose who made the report, whether the report was anonymous, or whether the report was independently generated by Child Protective Services' staff. (Doc. 108 at 2).

Nevertheless, the November 2 report was assigned to CFSD Child Protection Specialist Debran Anderson ("Debran"), who eventually contacted Mittelstaed at her home on November 5, 2018. (*Id.* at 3). Mittelstaed invited Debran into her home, where the two discussed CFSD's investigation. (*Id.*). Based on the report's allegations, Debran asked Mittelstaed if she would be willing to take a drug test. (*Id.*). Though Mittelstaed ultimately submitted to a drug test on November 6, 2018, she purports that she did not specifically agree to the test; rather, Debran told her it was required.[2] (*Id.* at 4).

---

[2] Perhaps inadvertently, Mittelstaed cites to evidence (Doc. 101-3 at 3) that does not exist in the Court record. Without this evidence, the Court cannot verify whether Anderson told Mittelstaed

3

The November 6 drug test indicated that Mittelstaed was positive for methamphetamine. (*Id.*). Upon learning of the positive result, Mittelstaed alleged and continues to maintain that the test was a false positive, attributing the positive result to the consumption of Adderall. (*Id.*). She asserts she had never used methamphetamine, but she also did not have a prescription for Adderall in 2018. (*Id.*). She was consuming "small, round orange [Adderall] tablets" she received from her sister, who purchased them from a third-party dealer. (*Id.*). Mittelstaed apparently asked Debran for a retest, but Debran told her there was "very little room for error" in the test (Doc. 103-3 at 1) and recommended that the three children be placed in an out-of-home temporary protective custody plan ("Safety Plan" or "Plan") (Doc. 108 at 4).

Mittelstaed signed the Safety Plan on November 7, 2018, and the Plan remained in effect until December 7, 2018. (*Id.* at 5–6, 9; Doc. 103-5 at 9). The Plan stated: "Elisa was found to be under the influence of methamphetamine while caring for her three children. This placed all three children in substantial risk resulting in the use of a protection plan." (Doc. 108 at 5). As part of the Plan, the children would reside with Mittelstaed's mother and father. (*Id.*). State Defendants further assert that Mittelstaed agreed to wear a drug patch and complete a chemical

---

the test was required. However, this fact is not dispositive to the issue presently before the Court.

dependency evaluation as part of the Plan. (Doc. 103-5 at 2). However, Mittelstaed was apparently unaware that the document she signed was a safety plan and she thought that drug testing was required based on what Debran told her. (Doc. 110 at 2).

On November 20, 2018, Mittelstaed attended an appointment for a chemical dependency evaluation and to have a drug patch applied. (Doc. 108 at 6). During the appointment, Mittelstaed underwent an oral swab Dräger test, which indicated she was positive for methamphetamine and amphetamines. (*Id.*). Mittelstaed again asserts she was taking Adderall, not methamphetamine or amphetamines. (*Id.* at 7).

The drug patch was removed on December 4, 2018. State Defendants assert that Mittelstaed removed it herself (Doc. 103-1 at 6) due to blistering and burning on her skin, but Mittelstaed stated that her doctor removed it because it looked like she was having an allergic reaction (Doc. 108-1 at 2–3). In either case, based on Mittelstaed's behavior, her failure to comply with the Safety Plan, including multiple positive tests for methamphetamine and the removal of the drug patch, Debran requested that Mittelstaed comply with daily urinalysis tests going forward. (Doc. 108 at 7). Mittelstaed agreed to the testing and was referred to Community Solutions; however, she did not show up for her daily tests from December 6–10, 2018. (*Id.*).

Debran began formal neglect proceedings on December 10, 2018, and requested the County Attorney to file for temporary legal custody of Mittelstaed's children. (*Id.* at 8). Eight days later, the Department of Health and Human Services ("DPHHS") petitioned the County Attorney for emergency protective services, which was granted by the Montana Thirteenth Judicial Court, Yellowstone County. (*Id.*). The petition was supported by Debran's affidavit recounting her investigation of Mittelstaed and her children. (*Id.*). The district court set a show cause hearing for January 3, 2019, and the order granting temporary custody, along with the petition and affidavit, were apparently hand delivered to Mittelstaed on December 22, 2018. (*Id.*). However, according to Mittelstaed, she never received Debran's affidavit recounting the investigation. (Doc. 108-1 at 10).

Mittelstaed attended the first court hearing on January 3, 2019, represented by attorney David Duke. (Doc. 108 at 9). That same day, Debran ceased all involvement in Mittelstaed's case and had no further interaction with her. (*Id.*). Thereafter, Defendants Brittany Anderson and Ashley Walker ("Walker") took over the management Mittelstaed's case.

The next day, Mittelstaed underwent another drug test. While her Dräger test results were negative (Doc. 108-2), State Defendants have submitted evidence of a positive test result for methamphetamine from C Solutions Lab (Doc. 103-2 at 2).

Mittelstaed again maintains that she was not positive for methamphetamine; rather, she was taking Adderall.

In late January, Mittelstaed believed that Walker was improperly sharing information about her case with Defendant Alyssa Kiefer ("Kiefer"). (Doc. 108 at 9–10). Mittelstaed had received Facebook messages indicating that Kiefer was posting online about the case. (*Id.* at 9). Subsequently, on February 28, 2019, Jason Puzio assumed custody of his biological children, RSP and MJP. While RSP and MJP were in his custody, Mittelstaed alleges they were harmed by Puzio and his live-in girlfriend. (*Id.* at 10).

Months later, State Defendants contend that the final drug test Mittelstaed was scheduled to attend was on May 9, 2019, but she did not show up. (*Id.* at 8; Doc. 103-2). Mittelstaed asserts she was never informed of the drug test. (Doc. 110 at 2). Nevertheless, that same day, the dependency and neglect proceedings were dismissed, and Mittelstaed's children were returned to her care. (Doc. 108 at 10).

Some time after the proceedings, Mittelstaed contacted DPHHS requesting information about her case. (Doc. 108-1 at 6). She asserts she reached out to "a lot of people" to gather information and contends that she sought the release of her case file on four different occasions, but DPHHS denied her requests each time. (Doc. 110 at 2).

It was not until March 6, 2021, that Mittelstaed contacted the Montana Justice Division of Criminal Investigation Child and Family Ombudsman Marci Buckles ("Buckles"). (Doc. 108-1 at 6). Buckles interviewed Mittelstaed on multiple occasions, and based on these interviews, Mittelstaed deduced that State Defendants violated her rights and performed negligent acts. (Doc. 110 at 1). Mittelstaed decided to file a tort claim and subsequently served the State of Montana Risk Management and Tort Defense Division on September 10, 2021 by mailing notice of her claim via certified mail. (*Id.* at 2).

On September 30, 2021, Buckles delivered her investigative findings to Mittelstaed, reportedly faulting State Defendants' handling of her case in numerous ways. (Docs. 39-1–39-6). According to Mittelstaed, this was the first time she saw the documents in her case file, including Debran's affidavit.

Mittelstaed filed her Complaint initiating this action approximately eight months later, on June 13, 2022. (Doc. 2). She filed her Third Amended Complaint on September 27, 2024. (Doc. 80). There are five remaining claims in the case. Count 1 alleges a claim against State Defendants pursuant to 42 U.S.C. § 1983. (*Id.* at 36–39; Doc. 96). Counts 2, 3,[3] 4, and 6 are alleged against CFSD as follows: Count 2 for violation of Mittelstaed's constitutional rights in Montana; Count 3 for

_____

[3] As noted above, Kiefer is named as a Defendant in Count 3 but has not appeared in this case.

negligence; Count 4 for infliction of emotional distress; and Count 6 for abuse of process. (Doc. 80 at 40–44).

## II. Legal Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making a summary judgment determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See id.* at 587.

## III. Discussion

State Defendants moved for summary judgment in July 2025, arguing that Mittelstaed's remaining claims are barred by the applicable statute of limitations. (Docs. 101, 102). Mittelstaed countered that her claims are not time barred because the doctrine of equitable tolling should apply. (Doc. 107). Judge Cavan ultimately recommended granting summary judgment in favor of State Defendants, finding that

Mittelstaed did not file within the statute of limitations and equitable tolling did not apply because Mittelstaed: (1) knew or had reason to know the factual basis of her claims in May 2019; (2) failed to show how lack of access to her records prevented her from timely filing suit; and (3) failed to specify which facts from Buckles's report formed the basis of her claims. (Doc. 123 at 15–16).

Mittelstaed objects and argues that Judge Cavan erred in three respects: (1) by disregarding DPHHS's refusal to provide records, despite Mittelstaed's diligent attempts to acquire information about her case; (2) by overlooking the fact that Mittelstaed did not know State Defendants' basis for removing her children until after Buckles investigated her case; and (3) by neglecting to account for the impact of the COVID-19 pandemic and Mittelstaed's pro se status. (Doc. 124 at 7–10). She requests this Court review de novo whether equitable tolling applies to both her federal and state law claims. For the following reasons, the Court overrules Mittelstaed's objections, adopts Judge Cavan's Findings and Recommendations, and grants State Defendants' Motion for Summary Judgment.

### A.    Section 1983 Claim (Count 1)

To begin, the Court reviews Judge Cavan's finding as to the statute of limitations and the accrual date of Mittelstaed's § 1983 claim for clear error and finds none.

10

Section 1983 does not contain its own statute of limitations. *See* 42 U.S.C. § 1983. Thus, "federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Montana courts apply a three-year statute of limitations to personal injury actions and therefore Mittelstaed had three years from the date her injury accrued to timely bring her § 1983 claim. Mont. Code Ann. § 27-2-204(1) (2021).

Though federal courts borrow a state's statute of limitations for a federal cause of action, "federal, not state, law determines when a civil rights claim accrues." *TwoRivers*, 174 F.3d at 991. "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* Accrual focuses on knowledge of the injury, not knowledge of its illegality. *Luvosky v. City & County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (in the context of a failure to hire based on racial discrimination, the claim accrued when the plaintiffs discovered there had been an adverse action, not that the employer acted with discriminatory intent in performing that act).

Here, Mittelstaed knew or had reason to know of State Defendants' alleged improper and unreasonable seizure of her children by May 9, 2019, the date that the child neglect proceedings were dismissed, and Mittelstaed's children were returned to her care. Though Mittelstaed perfunctorily argues she was not "fully aware of her

11

injury" until Buckles told her how CFSD's agents mishandled her case and provided her with a copy of the alleged violations (Doc. 124 at 6), her two-sentence argument is undeveloped, misstates the law, and not central to her primary request, which solely invokes a de novo review of equitable tolling, not claim accrual (*Id.* at 5).

Reviewing then for clear error, Judge Cavan correctly found that Mittelstaed's claim accrued on May 9, 2019, because she knew of her actual injury by that time. *See TwoRivers*, 174 F.3d at 991. The adverse decisions to undergo drug testing and remove Mittelstaed's children from her care occurred prior to May 9, 2019, even though the consequences of these decisions might not have been fully felt at that time. However, knowing there was an adverse action is enough to trigger accrual. *See Lukovsky*, 535 F.3d at 1051. It is undisputed that Mittelstaed knew State Defendants compelled her to submit to drug testing and then removed her children from her custody. Therefore, by May 9, 2019, Mittelstaed knew she had been injured and by whom.

Mittelstaed filed suit on June 13, 2022, more than three years after her claim accrued. Therefore, the three-year statute of limitations would bar the claim unless equitable tolling permits Mittelstaed to proceed with her suit.

Reviewing de novo, the Court finds that equitable tolling does not apply. Where federal courts borrow a state's statute of limitations, federal courts also borrow the forum state's tolling rules. *TwoRivers*, 174 F.3d at 992. In Montana, the

12

doctrine of equitable tolling pauses the running of a limitations period once a claim has accrued, permitting a lawsuit to proceed even when the claimant has missed the statutory filing deadline. *Schoof v. Nesbit*, 316 P.3d 831, 839–40 (Mont. 2014). "The policy behind the doctrine of equitable tolling avoid[s] forfeitures and allow[s] good faith litigants their day in court." *Brilz v. Metro. Gen. Ins.*, 285 P.3d 494, 499 (Mont. 2012) (quotation modified) (quoting *Addison v. California*, 578 P.2d 941, 945 (Cal. 1978). The doctrine is applied sparingly and only in specific circumstances where strict enforcement of a filing deadline would produce an unjust result. *See Schoof*, 316 P.3d at 840–41.

Although Montana courts have not adopted a single "one-size-fits-all approach," their decisions show consistent themes, including fairness, a plaintiff's diligent pursuit of rights, and protection of constitutional rights. *Weidow v. Uninsured Emps. Fund*, 246 P.3d 704, 709 (Mont. 2010); *e.g.*, *Schoof*, 316 P.3d at 841 (equitable tolling permitted where plaintiff, despite diligent efforts, was "substantially prejudiced" by defendant's concealment of a claim, particularly in light of the "overriding constitutional importance of transparency in local government"); *Louzeau v. GEICO Indem. Co.*, 207 P.3d 316, 320 (Mont. 2009) (equitable tolling permitted where plaintiff pursued her claim reasonably and in good faith despite filing her complaint in the wrong court); *Harrison v. Chance*, 797 P.2d 200, 208 (Mont. 1990) (equitable tolling permitted where plaintiff brought a case of

first impression about how newly enacted legislation affected an earlier Montana Supreme Court decision when the plaintiff reasonably had relied on the Court's prior holding).

In short, equitable tolling applies in "rare and exceptional circumstances." *Schoof*, 316 P.3d 840 (quoting *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000)). Montana courts otherwise apply "procedural bars regularly and consistently." *Id.* (quoting *Weidow*, 246 P.3d at 709). "[R]elief is only available when the plaintiff is actually prevented from filing on time despite exercising 'that level of diligence which could reasonably be expected in the circumstances.'" *Id.* (quoting *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004)).

Having reviewed the undisputed facts, the Court finds no such "rare and exceptional circumstances" exist in this case. Turning to Mittelstaed's first objection, she argues that Judge Cavan disregarded DPHHS's refusal to provide Mittelstaed with her records, despite her due diligence. Mittelstaed relies on *Schoof*, contending that if the nature of a defendant's actions prevents a plaintiff from ascertaining their claim, then equitable tolling applies. (Doc. 124 at 8).

In *Schoof*, plaintiff Brian Schoof, a resident of Custer County, filed a lawsuit against the Custer County Commissioners, alleging that they held a closed meeting on July 26, 2007, during which they decided to allow elected county officials to

14

receive cash payments in lieu of county contributions to a group health insurance program. 316 P.3d at 833. According to Schoof, neither he nor the public were advised of the decision until it was revealed at a public meeting over four years later, on August 17, 2011. *Id.* Schoof filed suit on September 16, 2011, alleging the Commissioners' decision violated the right to know and right of participation provisions of the Montana State Constitution, as well as the open meetings statute. *Id.* at 833–34. Schoof's claims were dismissed by the district court as time barred.

On appeal, the Montana Supreme Court addressed the 30-day limitations period barring Schoof's claims. *Id.* at 838. The Court applied the common law doctrine of equitable tolling, holding that the alleged concealment of the meeting and decision by the Commissioners justified tolling the limitations period. The Court reasoned that if Schoof could prove that "neither he nor the public learned or could have learned about the 'cash in lieu' policy until four years after it had been adopted, at which time he promptly filed suit," then equitable tolling would be justified. *Id.* at 840. According to Schoof, he delayed filing solely because the Commissioners held a closed meeting and failed to publish information to the public. *Id.* at 840–41. Thus, the Court's holding made clear that equitable tolling would apply in circumstances where a plaintiff suffers substantial prejudice because the defendant concealed a claim, despite the plaintiff's exercise of reasonable diligence.

Here, Mittelstaed's case differs from *Schoof* in two important respects. First, unlike *Schoof*, DPHHS's refusal to provide Mittelstaed with information about her case does not rise to same level of substantial prejudice as the Commissioners' outright concealment of the "cash in lieu" policy. Schoof did not know and had no way of knowing the existence of his claim—the facts underlying his injury, the accrual of the injury, or the wrongfulness of the injury—due to the Commissioners' concealment. This concealment meant that Schoof had no fair opportunity to sue until he learned about the adverse decision four years later.

Mittelstaed's case is different. She knew she was injured, when she was injured, and by whom. Unlike Schoof, she had three years to investigate her case because she was aware of the factual nature of her claim. Though it is undisputed that DPHHS denied her requests to release her records "on at least four occasions" (Doc. 110 at 2), Mittelstaed does not explain how this "concealment" prevented her from pursuing her opportunity to sue or investigating her case when she knew of her underlying injury. Nor does she explain why the Court should find that DPHHS's concealment substantially prejudiced her to the same degree the Commissioners' actions prejudiced Schoof. Indeed, Schoof incurred substantially greater prejudice, as the defendant's conduct deprived him of an opportunity to ascertain even the factual basis of his injury. That was not the case here.

Second, unlike *Schoof*, Mittelstaed fails to demonstrate a reasonable amount due diligence in pursuing her legal claim. Schoof filed his claim within 30 days after he realized his injury. Mittelstaed has not shown a similar level of diligence. From the time Mittelstaed's claim accrued in May 2019 to the time she became fully aware of the wrongfulness of her claim in September 2021, Mittelstaed states she "reached out to a lot of people." (Doc. 108-1 at 7). However, she does not say who she contacted, when she made contact, or what she sought from these "people." While she did seek release of her records "on at least four occasions," (Doc. 110 at 2), she does not say when she made these requests or give any indication as to what was in the requests that prevented her from filing suit or pursuing other avenues of investigation.

When she finally contacted Buckles in March 2021—approximately one year and 10 months after her claim accrued—she quickly realized the full extent of State Defendants' actions, including the alleged wrongfulness of their actions. By September 30, 2021, she had spoken with Buckles about her case during multiple interviews, she had received Debran's affidavit and Buckles's report, and she affirmatively knew State Defendants' basis for removing her children. Yet, she did not file her suit for another eight months and she provides no reason as to what caused the delay. Mittelstaed's awareness of her injury, coupled with her delay in filing after learning the full legal scope of her claim, strongly undercuts any assertion

that she acted with reasonable diligence to pursue her legal rights. For these reasons, the Court overrules Mittelstaed's first objection.

Turning to Mittelstaed's second and third objections, the Court overrules both. The Court rejects Mittelstaed's contention that Judge Cavan failed to consider her lack of knowledge regarding the basis for the removal of her children until after Buckles's investigation, for the reasons previously explained. Mittelstaed has not adequately demonstrated that DPHHS's concealment substantially prejudiced her from filing suit or that she diligently pursued her claim in manner that would warrant equitable tolling. Thus, her second objection is overruled.

The Court next rejects Mittelstaed's argument that the COVID-19 pandemic and her pro se status should have been considered in Judge Cavan's equitable tolling analysis. While this argument holds little merit on its own, the Court overrules this final argument because Mittelstaed raises it for the first time on objection. *See Friends of the Wild Swan v. Weber*, 955 F. Supp. 2d 1191, 1194 (D. Mont. July 8, 2013) ("A district court is well within its discretion in barring arguments raised for the first time on objections to a magistrate's findings and recommendations absent exceptional circumstances.").

Having overruled each of Mittelstaed's objections, the Court finds that equitable tolling does not apply in this matter. It is undisputed that the injury underlying Mittelstaed's § 1983 claim accrued by May 9, 2019, at the latest.

Therefore, she had three years from that date to timely file her claim. By filing on June 13, 2022, Mittelstaed missed the deadline by approximately 35 days. Accordingly, Mittelstaed's § 1983 claim is time barred and State Defendants are entitled to summary judgment as a matter of law.

### B.   State Law Claims (Counts 2, 3, 4, and 6)

Mittelstaed's remaining claims are state law claims, and her objections are the same as above. Like her § 1983 claim, Mittelstaed's state law claims are also subject to a three-year statute of limitations, and therefore, Mittelstaed had three years from the date her injury accrued to timely file her state law claims. Mont. Code Ann. § 27-2-204(1).

In Montana, "[t]he period of limitation begins when the claim . . . accrues and is not postponed because of lack of knowledge . . . by the party to whom it has accrued." *Nelson v. Nelson*, 50 P.3d 139, 142 (Mont. 2002) (citing Mont. Code. Ann. § 27-2-102(2)). Accrual means that all elements of the claim exist, the right to maintain an action on the claim is complete, and a court is authorized to accept jurisdiction of the action. Mont. Code. Ann. § 27-2-102(1)(a). For an injury claim, the statute of limitations does not begin until the person actually discovers the facts behind the claim or should have discovered them through reasonable diligence if the

injury or its cause was hidden. *Id.* § 27-2-102(3).[4]

Here, the Court concludes that Mittelstaed's state law claims accrued by May 9, 2019, for the reasons already stated. The statute of limitations therefore expired on May 9, 2022, and Mittelstaed's original Complaint was not lodged until June 13, 2022, making it untimely. Therefore, unless equitable tolling applies, Mittelstaed's claims are time barred.

Since the objections analyzed above apply with equal force to her state law claims, the Court again determines that equitable tolling is unavailable under Montana law. Accordingly, State Defendants are likewise entitled to summary judgment as a matter of law on Mittelstaed's state law claims.

## IV. Conclusion

For the reasons stated, IT IS HEREBY ORDERED that Judge Cavan's Findings and Recommendations (Doc. 123) are ADOPTED in full.

IT IS FURTHER ORDERED that:

(1)     Defendants State of Montana Child and Family Services Division, Ashlee Walker, Debran Anderson, and Brittany Anderson's Motion for Summary Judgment (Doc. 101) is GRANTED.

---

[4] Mittelstaed cited this statute in her response brief at summary judgment, however, she did not argue that her injury accrued later than May 9, 2019. (Doc. 107 at 3). She instead invoked the common law doctrine of equitable tolling. (*Id.* at 3–4). She likewise objected to Judge Cavan's findings related to equitable tolling. Like Mittelstaed's § 1983 claim, the Court reviews Judge Cavan's finding for clear error and finds none.

(2)    Plaintiff Elisa May Mittelstaed's Motion for Partial Summary Judgment (Doc. 104) is DENIED as moot.

(3)    This matter is dismissed with prejudice. The Clerk of Court is directed to enter judgment in favor of Defendants and close the matter.

DATED this _3rd_ day of March, 2026.

SUSAN P. WATTERS
United States District Judge